**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**CRISTIAN JOSUE FLORES BANEGAS,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv422**

**PAUL PERRY, *et al.*,**

**Respondents.**

# MEMORANDUM OPINION

This matter comes before the Court on Petitioner Christian Josue Flores Banegas's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1). Petitioner is proceeding *pro se* in this matter, so the Court liberally construes his § 2241 Petition. Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE has improperly detained him subject to 8 U.S.C. § 1225 of the Immigration and Nationality Act ("INA"). (ECF No. 1, at 6.)

For the reasons articulated below, the Court will grant the § 2241 Petition. The Court will order Respondents to release Petitioner.

## I. Factual and Procedural Background

### A. Factual Background

The Court has very limited information about Petitioner. Petitioner is a citizen of Honduras. (ECF No. 8-1, at 1.) "On August 17, 2024, [Petitioner] arrived at the Hidalgo Port of Entry without documents sufficient for lawful entry into the United States" and was paroled into the United States and apparently moved to Wisconsin. (ECF No. 8-1, at 2.) That same day, Petitioner was issued a Notice to Appear on February 19, 2025 in Chicago. (ECF No. 8-2, at 1–

2.) Petitioner was paroled until April 24, 2026. (ECF No. 8-3, at 1.)[1] However, Petitioner was detained on March 5, 2026. (ECF No. 1, at 2.)

On June 12, 2026, the Immigration Judge ordered Petitioner removed. *See* https://acis.eoir.justice.gov/en/ (last visited August 20, 2026).[2] An appeal was filed on June 29, 2026, and remains pending. *See id.* Petitioner is currently detained in Caroline Detention Center. (ECF No. 1, at 1.)

### B. <u>Procedural Background</u>

On May 13, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) On June 3, 2026, the Court ordered Respondents to either file a Notice indicating that the factual and legal issues presented in the petition do not differ in any material fashion from those presented in *Duarte Escobar v. Perry, et al.*, 3:25-cv-258 (E.D. Va.), or an Opposition to the § 2241 Petition discussing the material differences between *Duarte Escobar* and the petition. (ECF No. 7.) On June 10, 2026, Respondents filed their Opposition arguing that material differences exist from *Duarte Escobar*.

---

[1] It is not clear what type of parole Petitioner was granted. At most, Petitioner's I-94 form indicates that his "Class of Admission" is "DT." (ECF No. 8-3, at 1.) From what the Court can discern, DT means that the Petitioner may have requested parole "based on urgent humanitarian reasons or significant public benefit." *See* https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (last visited Aug. 20, 2026). However, "[t]hese aliens are not paroled into the United States under a categorical parole program or process." *See id.* Thus, as discussed below, the Court believes Petitioner's parole was pursuant to 8 U.S.C. § 1182(d)(5)(A). *See* Part II.C.

[2] To access Petitioner's case information, one must type in Petitioner's "244-672-634" number, and select country of origin "Honduras" and follow "SUBMIT".

2.) Petitioner was paroled until April 24, 2026. (ECF No. 8-3, at 1.)[1] However, Petitioner was detained on March 5, 2026. (ECF No. 1, at 2.)

On June 12, 2026, the Immigration Judge ordered Petitioner removed. *See* https://acis.eoir.justice.gov/en/ (last visited August 20, 2026).[2] An appeal was filed on June 29, 2026, and remains pending. *See id.* Petitioner is currently detained in Caroline Detention Center. (ECF No. 1, at 1.)

### B. Procedural Background

On May 13, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) On June 3, 2026, the Court ordered Respondents to either file a Notice indicating that the factual and legal issues presented in the petition do not differ in any material fashion from those presented in *Duarte Escobar v. Perry, et al.*, 3:25-cv-258 (E.D. Va.), or an Opposition to the § 2241 Petition discussing the material differences between *Duarte Escobar* and the petition. (ECF No. 7.) On June 10, 2026, Respondents filed their Opposition arguing that material differences exist from *Duarte Escobar*.

[1] It is not clear what type of parole Petitioner was granted. At most, Petitioner's I-94 form indicates that his "Class of Admission" is "DT." (ECF No. 8-3, at 1.) From what the Court can discern, DT means that the Petitioner may have requested parole "based on urgent humanitarian reasons or significant public benefit." *See* https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (last visited Aug. 20, 2026). However, "[t]hese aliens are not paroled into the United States under a categorical parole program or process." *See id.* Thus, as discussed below the Court believes Petitioner's parole was pursuant to 8 U.S.C. § 1182(d)(5)(A). *See* Part II.C.

[2] To access Petitioner's case information, one must type in Petitioner's "244-672-634" number, and select country of origin "Honduras" and follow "SUBMIT".

## II. Standard of Review

### A. Petitions for Writs of Habeas Corpus Under 28 U.S.C. § 2241

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. Detention Under 8 U.S.C. §§ 1225 and 1226

Section 1225(a) of the INA provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225 then divides "applicants for admission" into two categories under § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(2) pertains to the § 2241 Petition and the parties' filings. Section 1225(b)(2) provides that if an immigration officer "determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As this Court has previously explained, § 1225 covers individuals "*actively* seeking admission into the country, and not those who have already entered the country." *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 576 (E.D. Va. 2025) (emphasis in original) (quoting *Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at *5 (E.D. Va. Sept. 29, 2025)); *see also Ciba Cinta v. Noem*, No. 1:25-cv-1818 (LMB), ECF No. 11, at 3–6

(E.D. Va. 2025). Because individuals detained under this section are subject to *mandatory* detention, § 1225(b)(2) "does not grant detainees a bond hearing." *Id.* at 569.

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "already present in the United States." *Id.* at 578 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "*release the alien on . . . bond of at least $1,500*," or "release the alien on . . . conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

As this Court has previously explained, § 1225 and § 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens *seeking admission* to the United States" and § 1226(a) "covers aliens *already present* in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578. A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

### C. <u>Humanitarian Parole Under 8 U.S.C. § 1182(d)(5)(A)</u>

Even if an individual is classified as an alien "seeking admission" subject to mandatory detention under § 1225, the INA provides that an applicant for admission "may be temporarily released on parole for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quotation omitted). Specifically, 8 U.S.C. § 1182(d)(5)(A) provides that "[t]he Secretary of Homeland Security may . . . in his [or her] discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to

the United States." *Id.* Parole of an alien subject to mandatory detention "shall not be regarded as an admission of the alien." *Id.*[3] Specifically, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quotation marks omitted).

Section 1182(d)(5)(A) places some limits on humanitarian parole: "*when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served* the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* (emphasis added).

Regulations implementing this provision of the INA outline further how immigration officials may revoke a detainee's humanitarian parole. Humanitarian parole under § 1182(d)(5)(A) "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii).[4] At that point, "any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.* § 212.5(e)(2)(i).

---

[3] The INA further provides in its definitions section that "[a]n alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B).

[4] The implementing regulations also provide that parole "shall be automatically terminated without written notice . . . upon the departure from the United States of the alien[.]" 8 C.F.R. § 212.5(e)(1)(i). Because Petitioner does not appear to have departed from the United States after his parole into the country, the Court does not discuss this provision of the regulations below.

Not all grants of parole are subject to automatic termination. In cases where a parolee is not subject to the automatic termination of their parole, that parole "shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i). But immigration officials may terminate the parole of an alien not subject to automatic termination only "*upon accomplishment of the purpose for which parole was authorized* or when in the opinion of one of the officials listed [elsewhere in the regulation], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* (emphasis added). And like parolees facing automatic termination, "any order of exclusion, deportation, or removal previously entered shall be executed" once written notice is provided to these parolees. *Id.* § 212.5(e)(2)(i). Likewise, "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.*

## III. Analysis

Petitioner contends that Respondents have unlawfully subjected him to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A), rather than the discretionary detention provision of 8 U.S.C. § 1226(a). (ECF No. 1, at 6.) Petitioner notes that he is not an applicant for admission and he has not been convicted or arrested for any crime that requires him to be detained. (ECF No. 1, at 6–7.) In addition, Petitioner's parole was revoked nearly two months before it was set to expire. (*See* ECF No. 8-3, at 1; ECF No. 1, at 3.) Moreover, Petition's appeal of his removal order remains pending. Because Petitioner is proceeding *pro se*, the Court also construes him to argue that Respondents have deprived him of due process of law by revoking his humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), despite failing to serve the

purposes of that parole. In response, Respondents contend that Petitioner is properly detained pursuant to § 1225 and that he has received all the process he is due. (ECF No. 8, at 2–19.)

The Court has recently rejected Respondents' arguments. *Seleznev v. Mullin*, No. 3:26-cv-130, 2026 WL 907692, at *1–7 (E.D. Va. Mar. 31, 2026); *Hurtado-Barba v. Perry*, No. 3:26cv188, 2026 WL 950489, at *1–7 (E.D. Va. Apr. 8, 2026). The Court will grant the § 2241 Petition. Regardless of the statutory provision under which Petitioner is detained, Respondents have failed to provide Petitioner with the process due under § 1182(d)(5)(A) and the Fifth Amendment.[5] Because the Court concludes that Petitioner's due process rights have been violated, it need not reach his statutory argument.[6] The Court will order Respondents to release Petitioner.

### A. <u>Petitioner's Due Process Rights Have Been Violated</u>

Here, Because Petitioner is proceeding *pro se* and is detained, the Court liberally construes his § 2241 Petition. The Court construes Petitioner to argue that his ongoing detention violates his due process rights under the Fifth Amendment because the purpose of his parole was to allow him to remain in the United States while he pursued an application for asylum and withholding of removal. It is not clear whether Petitioner applied for asylum or withholding of

---

[5] The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person shall . . . be deprived of life, liberty or property without due process of law." U.S. Const. amend. V.

[6] Neither Respondents nor Petitioner has provided an agency record showing that Petitioner was paroled under 8 U.S.C. § 1182(d)(5)(A), or if he was conditionally paroled on some other ground. To the extent that he was conditionally paroled or released on his own recognizance, this is "legally distinct" from parole under § 1182(d)(5)(A), and Petitioner would be held under § 1226(a)(1)–(2) making his detention discretionary. *See Hasan v. Crawford*, 800 F. Supp. 3d 641, 654–55 (E.D. Va. 2025). The Court assumes based on Respondents' submissions that Petitioner was granted humanitarian or public benefit parole under § 1182(d)(5)(A).

removal as neither Petitioner nor Respondents have provided that information. However, Petitioner's appeal of his order of removal remains pending. On this record, the Court must assume that the purpose of his parole has not been served and any attempt to return Petitioner to physical custody before the adjudication of an asylum claim or withholding of removal violates the express terms of the parole statute. Respondents, clearly reading this argument into the § 2241 Petition, counter that Petitioner's "due process rights extend no further than what the INA provides" and that, even if the Court determines that Petitioner's due process rights extend beyond the INA, those rights have not been violated. (ECF No. 8, at 15; *see* ECF No. 8, at 12–19.)

Regardless of whether Petitioner's due process rights are defined by the INA alone or the Fifth Amendment,[7] Respondents have failed to provide Petitioner with the process that he is due. As a result, Petitioner's due process rights have been violated.

#### 1. The Court Will Consider the Process Due to Petitioner Under Both the Statutory Scheme and Under the *Mathews v. Eldridge* Framework

Respondents contend that the INA alone defines Petitioner's due process rights. (ECF No. 8, at 12–15.) However, in a similar case, the Court recently determined that Petitioner's due process rights should be analyzed under the Fifth Amendment and the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Seleznev*, 2026 WL 907692, at *5–7.

The Court is aware that courts in this District have applied both standards. Some courts have determined that provisions of the INA alone outline the due process rights of parolees like

[7] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

Petitioner. *See Pipa-Aquise v. Bondi*, No. 1:25-cv-1094 (MSN), 2025 WL 2490657, at *2 (E.D. Va. Aug. 5, 2025) ("[A]n entering alien has only those rights concerning his admissibility as Congress has statutorily provided." (citation omitted)); *Rodriguez v. Bondi*, No. 1:25-cv-791 (AJT), 2025 WL 2490670, at *3 (E.D. Va. June 24, 2025) ("Where an applicant is an arriving alien, due process only requires those rights regarding admission that Congress has provided by statute." (quotation marks omitted) (citation omitted)). Other courts have applied the *Mathews* framework to parolees like Petitioner. *See Pineda-Berrios v. Lyons*, No. 1:25-cv-2332 (LMB/LRV), 2026 WL 384159, at *5 (E.D. Va. Feb. 11, 2026).

Regardless of which due process framework the Court applies, the answer remains the same: Petitioner's due process rights have been violated.

### 2. Respondents Have Not Provided Petitioner with the Process Due Under § 1182(d)(5)(A)

Even if Petitioner's due process rights are defined by statute alone, Respondents have not provided Petitioner with due process.

The Court first observes that neither party has described in sufficient detail the statutory and regulatory scheme governing the revocation of parole. Neither Petitioner nor Respondents cite the regulations implementing § 1182(d)(5)(A), which explain the process by which Respondents may revoke parole and what protections Respondents must afford Petitioner. *See* 8 C.F.R. § 212.5(e)(1)–(2). Neither party analyzes the effect of the expiration of Petitioner's parole on his § 2241 Petition. The automatic expiration of an individual's parole typically determines whether or not that individual is entitled to notice before their parole is revoked. 8 C.F.R. § 212.5(e)(1)(ii).

Also, Respondents do not acknowledge that regardless of the regulatory scheme, § 1182(d)(5)(A) itself provides that the Secretary of Homeland Security shall return an alien "to

the custody from which he [or she] was paroled" "when the purposes of such parole shall . . . have been served." Respondents offer no argument as to whether the purposes of Petitioner's parole have been served. The record itself is similarly bereft of any indication that the purposes of Petitioner's parole had or had not been served prior to his detention.

The only issue before the Court is whether Respondents have denied Petitioner due process of law by revoking his parole before its "purposes" had been "served." In deference to the *pro se* status of Petitioner, and because Respondents make no argument to the contrary, the Court concludes that Respondents have deprived Petitioner of due process under the provisions of the INA by revoking his parole prior to the service of his parole's purposes.

### 3. Respondents Also Have Not Provided Petitioner with the Process Due When Applying the *Mathews* Framework

The Court reaches the same answer when it instead applies the framework of *Mathews v. Eldridge*. *Mathews* requires courts to weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335–36.

First, "[t]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Even if Respondents are correct that a parolee "does not have the same status for due process purposes as an alien who has effected entry," (ECF No. 8, at 12–14 (citation omitted)), Petitioner still has a significant private interest in remaining free. *See Pineda-Berrios*, 2026 WL 384159, at *6 (finding parolee detained subject to § 1225 had a significant liberty interest).

Second, Petitioner faces a serious risk of the erroneous deprivation of his due process rights. As described above, Respondents place nothing on the record about whether the purposes of Petitioner's parole have been served, despite § 1182(d)(5)(A)'s requirement that an alien may be returned "to the custody from which he [or she] was paroled" "when the purposes of such parole shall . . . have been served." In fact, Respondents argue that Petitioner faces little risk of an erroneous deprivation of his due process rights because, even where he is detained subject to § 1225's mandatory detention provisions, Petitioner's detention has not reached the length of time warranting a bond hearing. (ECF No. 8, at 18.) Respondents do not address the risk of erroneous deprivation if *any* length of detention is improper.

Third, Respondents have legitimate interests in immigration enforcement. "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022). But Respondents "remain subject to an obligation to effectuate [Petitioner's] detention in a manner that comports with due process. Nothing in this record explains why [Respondents] are unable to efficiently enforce the immigration laws . . . while also affording individuals with their core due process right: notice and an opportunity to be heard." *Pineda-Berrios*, 2026 WL 384159, at *7 (quotations omitted). Indeed, the record is bereft of any indication about whether Respondents have determined that the purposes of Petitioner's parole have been served. Respondents have provided Petitioner "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond." *Id.* (citation omitted).

Because all three *Mathews* factors weigh in his favor, the Court must find that Petitioner's due process rights under the Fifth Amendment have been violated.

**B. The Appropriate Remedy for the Violation of Petitioner's Due Process Rights is Immediate Release**

Because Petitioner's due process rights have been violated, the Court must determine the appropriate remedy for that violation. Respondents revoked Petitioner's parole without any determination as to whether its purposes had been served. The only remedy for that violation of his due process rights is release. To be sure, Respondents may well determine that the purposes of Petitioner's parole have been served. But on the record before the Court, without any such determination, Petitioner's detention is improper. The Court will order Respondents to release Petitioner immediately and provide a date certain by which they will hold a hearing at which Respondents will make a determination as to whether the purposes of Petitioner's parole have been served. *See Darwich v. Kemerling*, No. 1:25-CV-1162, 2026 WL 170801, at *8 (M.D.N.C. Jan. 22, 2026) (finding release to be the proper remedy where alien's parole was terminated without explanation).

Because the Court will order Petitioner's release on due process grounds, the Court need not reach Petitioner's arguments with respect to the statutory basis of his detention.

## IV. Conclusion

Because Respondents have failed to provide Petitioner with due process of law, the Court will grant the § 2241 Petition and order Petitioner's immediate release.

An appropriate Order shall issue.

/s/ MHL

M. Hannah Lauck
Chief United States District Judge

Date: 8/26/26
Richmond, Virginia